IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 99-121 |
| | ) | (Judge Merow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR DISCOVERY AND APPENDIX

Pursuant to the Court's order dated June 17, 2005 (as modified to enlarge the deadline for this motion), defendant, the United States, respectfully requests a period of formal discovery to allow the Government to obtain reliable information concerning costs incurred by plaintiff, Ford Motor Company. Undersigned counsel certifies that the parties conferred in good faith, in accordance with the June 17 order, but were unable to reach an agreement to obviate or limit the Government's need for discovery prior to trial.

The Court noted in its June 17 order (at p. 2) that discovery could be warranted "[i]f . . . audit activity to date has raised reasonable questions as to the nature of plaintiff's accounting system for this site clean-up, or its accuracy in recording cost incurrence . . . ." The Government's need for discovery arises from concerns that are similar, although not identical, to the issues anticipated by the Court. Specifically, as detailed in the attached Defense Contract Audit Agency ("DCAA") report dated June 6, 2005 – in which the DCAA concluded

that it possessed no basis to recommend <u>any</u> payment to Ford – and discussed below, the cost documentation provided by Ford is essentially unauditable, because it is manifestly incomplete. <u>Separately</u>, because Ford relies solely upon testimony to support its allocation to the Willow Run site clean-up of 80 percent of attorney fees, and 100 percent of expert fees, billed by Dickinson Wright PLLC during the period in question, the Government cannot prepare an adequate defense (or determine a reasonable settlement figure) without the opportunity to depose Ford's trial witnesses on that subject.

Ford's "Statement of Claimed Costs," which it served, at the Court's direction, on February 21, 2005 (a copy of which is attached), identifies costs in three general categories: (i) fees paid to Dickinson Wright; (ii) fees paid directly to IT Corporation, an environmental consulting firm, which was also retained for the Willow Run clean-up by General Motors Corporation ("GM"), and retained by Ford at two other clean-up sites; and (iii) site remediation costs paid "through" the Willow Run Foundation, which was also a joint effort of Ford and GM. We summarize below, with respect to each cost category, the gaps in the audit trail that necessitate discovery before trial. All of these issues are also addressed in the DCAA audit report.

<u>Dickinson Wright</u>. Ford provided top-level summaries from its legal department to support these costs. Several Dickinson

Wright invoices provided by Ford lack invoice numbers and, therefore, cannot be matched to the law firm's ledger. This gap in the audit trail is especially significant because approximately $135,000 of the Dickinson Wright invoices appear to be recorded on the law firm's own books as uncollectible. There is also an independent inconsistency between Attachment A1 to Ford's statement, which indicates that Ford has excluded from its claims fees totaling $69,894.82, and Attachment A2, which appears to show a reduction of $34,218.32. Separately, even assuming the accuracy and reliability of Ford's fee summaries, defendant should, in fairness, have the opportunity to depose the witnesses upon whom Ford relies in allocating Dickinson Wright's fees to the Willow Run clean-up.

IT Corporation. Ford provided summaries of the total amounts allegedly paid to IT Corporation by Ford and GM for the Willow Run remediation, with no basis to segregate or allocate those costs between the two car makers. Attempting to substantiate the claimed amount, the DCAA noted, among other things, that Ford's payment certificate No. 27 for IT Corporation appears to be double-recorded in Ford's ledger; Ford has not identified where - if anywhere - a payment by GM to Ford of more than $4.5 million for Ford's "overpayment" of IT Corporation has been credited against Ford's claim; and Ford has not supplied IT Corporation's final invoice - which could reflect reconciliations

or credits that could reduce Ford's total payment. On May 25, 2005, Ford provided a limited amount of evidence of remittances to IT Corporation, but this evidence does not resolve our concerns, which we can address only through discovery.

Willow Run Trust Fund. Ford derived the claimed amount by multiplying Ford's arbitrated, 9.763 percent responsibility for Willow Run remediation costs by the alleged total expenditures of the Trust Fund, allegedly adjusted for payments by potentially responsible parties other than Ford and GM, of $11,416,555. It is simply impossible to test these calculations without obtaining more information regarding payments into and out of the Trust Fund than Ford was willing to provide. Moreover, as explained at pages 2 and 9-10 of the audit report, the DCAA substantiated payments by Ford to the Trust Fund of $1.3 million - but the auditor noted that GM credited Ford more than $2.5 million for "overpayments" to the Trust Fund.

Equally important - and potentially relevant to all of the above - Ford disclosed on June 2, 2005 (approximately 100 days after serving its statement of claimed costs), that, in August 2001, Ford and GM executed a "site exchange agreement" to reconcile their remediation liabilities - which, of course, include payments by Ford and GM to Dickinson Wright, IT Corporation, and the Trust Fund. Ford declines to reveal the full text of the site exchange agreement (even subject to a

protective order). It has provided only a heavily redacted version, which is of no value in analyzing how the agreement may affect Ford's bottom line for the Willow Run site.[1]

Our requirement for discovery to address these issues is, in one sense, regrettable. Ford learned of its potential multi-million-dollar indemnification claim under its World War II bomber contract no later than 1993, and probably earlier. We would expect to see in these circumstances a meticulously prepared claim with a clear audit trail. See Delco Elec. Corp. v. United States, 17 Cl. Ct. 302, 321 (1989) ("A contractor must prove its costs using the best evidence available under the circumstances."), aff'd, 909 F.2d 1495 (Fed. Cir. 1990) (table). Because that is not what Ford has chosen to provide, the Government cannot mount a meaningful defense or engage in meaningful settlement discussions, without discovery. Ford may, in response to this motion, seek to explain (for the first time) some of the accounting anomalies noted above. Even assuming Ford's belated arguments did not simply raise new questions, however, they cannot substitute for discovery, which will allow

[1] Ford's determination to conceal the full terms of the August 2001 site exchange agreement with GM may help to explain Ford's surprising vehemence in urging the Court, after the remand from the court of appeals, to calculate Ford's damages and enter judgment upon the basis of the prior summary judgment record – which closed in late 2000 – rather than allowing the Government to examine Ford's claimed costs in any detail.

us to obtain answers under oath and to attempt to determine whether we have seen the relevant documents.

A compressed discovery schedule may be reasonable - and we may ultimately conduct less than the full extent of discovery allowed by the Court. We should, however, be allotted no fewer than five depositions, 15 interrogatories, and 25 requests for production of documents and things, focused upon verifying and quantifying Ford's recoverable costs. Alternatively, at a bare minimum, fairness dictates that defendant be allowed to depose anyone whom Ford may present as a witness at trial.

CONCLUSION

For the reasons given above, we respectfully request the Court to grant our request for discovery before trial.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/
DAVID M. COHEN
Director

OF COUNSEL:

JOHN LAURO
Attorney
Air Force Legal Services
Agency
Arlington, VA

s/Kyle Chadwick
KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 305-7644

Attorneys for Defendant

July 25, 2005

CERTIFICATE OF FILING

I certify that on July 25, 2005, I filed the attached document by means of the Court's electronic filing system. Opposing counsel and others may access the filing through the Court's system.

s/Kyle Chadwick