**U.S. Department of Justice**

Civil Division

PDK:DMC:KChadwick
DJ No. 154-99-121

Tele: (202) 305-7562
Fax: (202) 305-7644

*Washington, D.C. 20530*

June 8, 2005

BY FACSIMILE AND MAIL

Charles J. Cooper
Cooper & Kirk, PLLC
1500 K Street, N.W., Suite 200
Washington, D.C. 20005

Re: Ford Motor Co. v. United States,
No. 99-121C (Fed. Cl.)

Dear Mr. Cooper:

This is the Government's determination pursuant to ordering paragraph 1(c) of the January 19, 2005 order of the United States Court of Federal Claims in this matter, regarding the evidence provided by Ford on February 21, 2005, pursuant to ordering paragraph 1(a) of the January 19 order. Regrettably, although Ford's legal entitlement to reimbursement under its World War II Army Air Force Contract No. W535-ac-21216 (the "bomber contract") for costs associated with the environmental remediation of the Willow Run Bomber Plant site is established, see Ford Motor Co. v. United States, 378 F.3d 1314 (Fed. Cir. 2004), the information supplied by Ford is insufficient to establish a quantum of recovery. The Government would have preferred to be in a position to pay Ford's properly documented, reimbursable costs.

This decision is based primarily upon the attached Defense Contract Audit Agency ("DCAA") report No. 2261-2005G 17200 002. The DCAA report provides additional details, as well as a chronology of Ford's amendment and supplementation of its claim data – which continued as late as Thursday, June 2, 2005, although the January 19 order directed Ford to provide us, no later than February 21, 2005, "all items and figures from books of account or other records, which are to be introduced in evidence in this matter . . . ."

The January 19 order requires us to

> provide . . . a statement, or schedule(s) admitting or denying the accuracy or admissibility of each schedule or summary (or portion thereof) submitted by plaintiff, which . . . shall address each item and figure submitted and reflect and set forth the results of the . . . audit of the source material from which the submissions were derived and shall set forth the reason(s) for any denial of accuracy

> as to specific items or figures, citing generally accepted accounting principles or regulations where applicable, and the reason(s) for any denial of admissibility as to specific items or figures, keyed to the applicable Federal Rule(s) of Evidence[.]

None of our objections below relates to the admissibility per se of the information that Ford has provided. Indeed, we assume for purposes of this determination, and without prejudice to our position at trial, that, with proper supporting testimony, Ford could lay a foundation for the documents supplied to us on February 21, 2005, either as business records, FRE 803(6), or summaries, FRE 1006. Our decision is based, instead, upon the lack of probative weight and auditability of Ford's evidence to support its claim of more than $7 million.

Ford learned of its potential multi-million-dollar indemnification claim under the bomber contract no later than 1993, and probably earlier; and it appears that your firm has represented Ford in this matter since no later than 1998. The claimed costs were incurred between 1988 and 2002. In these circumstances, Ford should have documented its incurred costs, upon a contemporaneous basis, rather than relying upon circumstantial evidence of payment, post hoc estimates, and the like. See Delco Elec. Corp. v. United States, 17 Cl. Ct. 302, 321 (1989) ("A contractor must prove its costs using the best evidence available under the circumstances."), aff'd, 909 F.2d 1495 (Fed. Cir. 1990) (table). Ford's recent assertions regarding the burden of producing direct and detailed evidence of payment, such as bank statements, are not well taken. Any alleged burdensomeness is directly attributable to Ford's own decisions concerning the retention of evidence relevant to its claim, and provides no grounds for us to relax the prevailing standards for proving millions of dollars of damages.

In accordance with the January 19 order, we treat the attachments to Ford's February 21, 2005 "Statement of Claimed Costs" as Ford's "schedules." As noted, the exact dollar amount claimed by Ford, and the supporting evidence, have been moving targets. Ford provided a significant amount of new evidence as recently as May 27, 2005 (in response to written DCAA requests dating back more than 60 days, to March 2005). There was insufficient time for the DCAA auditor to analyze this material, given the June 8 deadline for this determination, to which the parties agreed on May 24, 2005. Further, there is no single document or schedule that summarizes Ford's claimed costs, and the support therefor, as they have evolved to the date of this letter. This complicates the task of complying with the Court's direction in the January 19 order to "address each item and figure submitted . . . and set forth the reasons for any denial . . . ."

1. Ford's statement of claimed costs (p. 1) states that "Ford paid directly a total of $1,995,274.79 in attorney fees and $782,444.09 in expert fees [to Dickinson Wright PLLC] defending the claims arising out of the environmental proceedings . . . ." By letter dated April 8, 2005 (approximately 45 days after providing its statement of costs), Ford reduced the total claimed amount of attorney and expert fees by $554,005, from $2,777,719 to $2,223,714. Attachments A2-A5 to Ford's statement of costs are the supporting schedules; Attachment A1 is a declaration of a Dickinson Wright partner. The evidence fails to establish that the claimed amounts are correct. Ford derived the claimed amounts from the fees reflected in Attachments A2-A5 by allocating 80 percent of certain fees, and 100 percent of other fees, to the bomber plant remediation effort. The DCAA was unable to substantiate these allocations, for the reasons

stated at pages 2, 11, and 13 of the audit report. In addition, the statement in Attachment A1 that Ford has excluded fees of $69,894.82 from this portion of the claim is not supported by Attachment A2, which appears to show a reduction of only $34,218.32. More generally, some of the Dickinson Wright invoices in Attachment A3 lack invoice numbers and, therefore, cannot be traced to the law firm's ledger; and a total of approximately $135,000 of the Dickinson Wright invoices appear to be recorded as uncollectible. We have no internal Ford documentation to confirm remittances to Dickinson Wright.

2. Ford's statement of claimed costs (p. 2) states that "Ford incurred costs of no less than $3,843,616.75 in direct payments to the IT Corporation for remediation of environmental damage . . . ." Attachment C2 to the statement is the supporting schedule. On March 22, 2005, Ford provided a revised Attachment C2. Like the original, the revised Attachment C2 reflects payments made by both Ford and General Motors to IT Corporation, but it does not reflect any basis to segregate or allocate the payments between the two companies. Nor has Ford updated its statement of claimed costs to explain whether the revised Attachment C2 is intended to support Ford's original claimed amount of $3,843,617.75, or some other amount. The evidence fails to establish that the claimed amount is correct. The DCAA could not substantiate the amount of payments to IT Corporation for the reasons stated at pages 4-9 of the audit report. The DCAA's preliminary review of the additional documentation provided by Ford on May 27, 2005 raised further accounting questions, noted at page 7 of the DCAA report. Most troubling are that Ford's payment certificate No. 27 for IT Corporation appears to be double-recorded in Ford's ledger; it is unclear where, if anywhere, a payment by GM to Ford of more than $4.5 million for Ford's "overpayment" of IT Corporation has been credited against Ford's claim; and we have not seen IT Corporation's final invoice, which could reflect reconciliations or credits that could reduce Ford's total payment. On May 25, 2005, Ford provided a limited amount of evidence of remittances to IT Corporation, but this evidence does not resolve the concerns noted above.

3. Finally, Ford's statement of costs (p. 4) states that "Ford incurred costs of no less than $1,114,598.26 in remediation of environmental damage," which it paid through the Willow Run Trust Fund. Attachment C3 to the statement is the supporting schedule. Ford derived the claimed amount by multiplying Ford's arbitrated, 9.763 percent responsibility for Willow Run remediation costs by the alleged total expenditures of the Fund, adjusted for payments by potentially responsible parties other than Ford and GM, of $11,416,555. As explained at pages 2 and 9-10 of the audit report, the DCAA substantiated payments by Ford to the Trust Fund in the amount of $1,300,000, but the DCAA also noted that Ford was credited $2,550,701.23 by GM for "overpayments" to the Trust Fund. Equally important, a June 2, 2005 e-mail from a Dickinson Wright attorney, which arrived too late for us to analyze for this decision, states that Ford and GM entered into a "site exchange agreement" to reconcile their respective remediation liabilities. The Government needs to examine that agreement, which was not provided, to determine whether it affects in any way the allocation between Ford and GM of the Willow Run Trust Fund assets and liabilities. (I understand that Ford provided to the DCAA auditor a redacted copy of the agreement as this letter was being written, on June 7, 2005.) We have no confidence that the claimed amount that Ford paid through the Trust Fund is correct.

As you know, the parties jointly promised the Court a status report on June 10, 2005, suggesting further proceedings in this case. In my view, and that of the Air Force, the parties

should not need to rely upon, or wait for, the Court to calculate damages and enter a judgment. Ford is legally entitled to reimbursement in some amount. This letter and the DCAA audit report suggest straightforward ways for Ford to support its claim. Although I lack settlement authority, and any proposed settlement must be reviewed and approved by a Department of Justice official, I am prepared to forward a settlement recommendation promptly, if Ford will supply the additional information requested. I look forward to discussing with you soon the contents of the joint status report. Should there be any reason to anticipate needing an extension of time to file the report, I note that I will be on leave next week, June 13-17.

Very truly yours,

KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch

# DEFENSE CONTRACT AUDIT AGENCY

# AUDIT REPORT NO. 2261–2005G 17200 002

June 6, 2005

**PREPARED FOR:** United States Department of Justice
Commercial Litigation Branch
Civil Division
ATTN: Mr. Kyle Chadwick, Esq.
1100 L Street, N. W.
Attn.: Classification Unit, 8th Floor
Washington, DC 20530

**PREPARED BY:** DCAA Great Lakes Branch Office
38701 Seven Mile Road, Suite 460
Livonia, MI 48152-1091
Telephone No. (734) 805-3080
FAX No. (734) 805-3090
E-mail Address dcaa-fao2261@dcaa.mil

**SUBJECT:** Audit Report on Ford Motor Company v. U. S. for EPA Damage Claim

**REFERENCES:** Contract No. W535-AC-2126
Relevant Dates: See Page 14

**CONTRACTOR:** Ford Motor Company
One Parklane Blvd., Suite 600
Dearborn, MI, 48126-2490

**REPORT RELEASE RESTRICTIONS:** See Page 15

**CONTENTS:**

| | Page |
|---|---|
| Subject of Audit | 1 |
| Scope of Audit | 1 |
| Results of Audit | 1 |
| DCAA Personnel and Report Authorization | 14 |
| Audit Report Distribution and Restrictions | 15 |
| Chronology of Audit Request – Appendix 1 | 16 |
| Other Appendixes 2 to 4 | 19 |

**Audit Report No. 2261-2005G 17200 002**

## SUBJECT OF AUDIT

As you requested on March 02, 2005, we have examined the Ford Motor Company (FMC) $7,735,934 claim in order to assist with your compliance with the court ordered verification of costs under the Ford Motor Company (FMC) v. United States, No. 99-121C (Fed. Cl.) proceedings to determine if the claimed costs are acceptable as a basis for settlement. FMC submitted the claim proposal dated February 21, 2005, under Contract No. W535-AC-2126 for reimbursement of attorney fees, expert fees, and environmental clean-up costs.

The claim proposal and underlying supporting data are the responsibility of the plaintiff. Our responsibility is to express an opinion on the claim based on our examination.

## SCOPE OF AUDIT

As you requested, our examination included:

- Verification of payment by FMC for (i) claimed attorney fees and expert fees, (ii) claimed direct payments to IT Corporation, and (iii) contributions into the Willow Run Trust Fund;
- The associated costs for (i) claimed attorney fees and expert fees, (ii) claimed direct payments to IT Corporation, and (iii) claimed expenditures from the Willow Run Trust Fund are allowable and allocable to the subject environmental damage claim arising from Ford's operation of the Bomber Plant under Contract No. W535-ac-2126; and
- Claimed allocation figures used for the allocation of attorney fees and expert fees.

We have not specifically examined Ford Motor Company's accounting system and its related internal controls. The scope of our examination reflects our assessment of control risk and includes audit tests of compliance with applicable laws and regulations that we believe provide a reasonable basis for our opinion.

## RESULTS OF AUDIT

In our opinion, the submission was prepared pursuant to court ordered proceedings, as filed on January 19, 2005, in order to set forth the amounts claimed in the subject claim proposal. The Plaintiff's Statement and Supporting Schedules are not adequate. Because the Plaintiff's Statement and Supporting Schedules are not adequate, we cannot attest to the overall accuracy of the proposed claimed amounts using the evaluation criteria you have requested, for the reasons stated below:

- Significant amounts of source documentation were provided on May 27, 2005, at D&W offices. We believe this source documentation was not provided in a timely manner in order for us to sufficiently examine this source material and provide our results by the current Court Order due date of June 8, 2005;

- Other source material including attorney work product and expert consultant work product were not provided because attorney asserted client privileges or attorney asserted providing this data would impose an undue burden;
- Other source documentation, including, Ford payments to IT Corporation and Ford payment contributions to the Willow Run Trust Fund have to date not been provided to us in a timely manner in order to allow adequate evaluation by us; and
- Supporting schedules provided to us do not reconcile to the submitted claim and no reconciliations or revised claims have been submitted.

We consider this data necessary in order to adequately evaluate the amounts and items in the Plaintiff's Statement and supporting schedules (Attachments A-1, A-2, A-3, A-4, A-5, B-1, C-2, and C-3). The listed attachments correspond to the amounts claimed in Plaintiff's Motion for Summary Judgment, filed December 21, 1999.

Nevertheless, in order to be responsive to your request, we have evaluated the claim to the extent possible in the circumstances, as summarized below.

SUMMARY OF CLAIMED COST

| | Plantiff's Statement | Plaintiff's Outside Counsel's (C&K) Revised Amount | Difference | Notes | Schedule |
|---|---|---|---|---|---|
| Item 1 | | | | | |
| Attorney Fees | $ 1,995,275 | $ 1,596,220 | $ 399,055 | 1 | 1 |
| Expert Fees | 782,444 | 626,954 | 155,490 | 1 | 1 |
| Total Item 1 | $ 2,777,719 | $ 2,223,174 | $ 554,545 | | |
| Item 2 | | | | | |
| Payments to IT Corp | 3,843,617 | | | 2 | |
| Item 3 | | | | | |
| Payments to Willow Run Trust Fund | 1,114,598 | | | 3 | |
| Total All Items | $ 7,735,934 | | | | |

## EXPLANATORY NOTES

### 1. Attorney Fees and Expert Fees

a. Summary of Conclusions.

For the reasons previously noted, we were unable to provide a statement of the overall accuracy of claimed costs of $2,777,719 or the Plaintiff's outside counsel revised amount of $2,223,714.

To be responsive to your request we have summarized the amounts for attorney fees and expert fees. The claimed amounts have been revised downward by the plaintiff's outside legal counsel of Cooper & Kirk (C&K). We were unable to determine the validity of the proposed allocation percentages, as applied to attorney fees and expert fees proposed. Additional details regarding the basis of claimed costs and our evaluation of claimed costs for attorney fees and expert fees are in Schedule 1 page 11 of this report.

b. Basis of Claimed Cost.

Plaintiff's claimed costs are based on amounts as given in paragraph one of the Plaintiff's Statement of Claimed Costs and Supporting Schedules sent under Cover Letter dated February 21, 2005 from C&K (Plaintiff's Statement).

In addition, Attachment A1 (Ms. Coughlin's Declaration) gives the narrative basis for claimed costs. In general, for reasons given in paragraphs 8 and 9 of Ms. Coughlin's Declaration, the applicable allocation percentages are used as detailed in Attachment A1, paragraphs 9 - 14 and applied to the amounts shown in Attachments A2 through A5.

After deducting fee amounts that are not to be included in the claim, Coughlin applies an 80% allocation figure. However, as explained in paragraph 14 of Ms. Coughlin's declaration, there were services related to expert fees of James Meenhan and Michael Madaraz (Attachment A5) totaling $4,995, that are solely related to the Bomber Plant.

c. Audit Evaluation.

Revised Amount

We noted the Plaintiff's Statement amounts under paragraph one for attorney fees and expert fees did not reconcile to the amounts for attorney fees and expert fees as given in Ms. Coughlin's Declaration (Attachment A1) and the supporting schedules under Attachments A2 through A5. During our entrance conference on March 22, 2005, we informed C&K of this difference. At that time, C&K agreed to pursue this difference to determine the amounts that the Plaintiff means to claim for attorney fees and expert fees.

In a letter dated April 8, 2005, C&K confirmed the correct amounts to be claimed are as shown above under the Plaintiff's Outside Counsel (C&K) Revised Amount.

Allocation Figures

We attempted to validate Ms. Coughlin's use of the allocation figures by evaluating the description of services provided on the underlying supporting documentation. See Schedule 1 page 11 for further details.

## 2. Payments to IT Corporation

a. Summary of Conclusions.

For the reasons previously stated and as stated in Status of Attachment C2 and Supporting Data section below, and because we were not given sufficient remittance evidence in the forms requested, cancelled checks, receipts, and bank statements, we are unable to provide a statement of the claimed costs of $3,843,616.75 as accurately representing direct payments by Ford to IT Corporation.

SUMMARY OF CLAIMED DIRECT PAYMENT TO IT CORPORATION

| Proposed | Attachment C2 | Allocation Percentage | Claimed | Note 2.b. Reference |
|---|---|---|---|---|
| 21-Feb-05 | $39,369,218 | 9.763% | $ 3,843,617 | (i) |

Status of Attachment C2 and Supporting Data

As of March 22, 2005, we were unable to determine the accuracy of direct payments by Ford to IT Corporation as follows:

February 21, 2005 Original Attachment C2 (as referenced in Plaintiff Statement)

The original Attachment C2, as submitted with the Plaintiff Statement does not segregate and identify individual payments Ford made to IT Corporation. Nor does the Attachment C2 identify payments by payment certificates.

The original Attachment C2 does not identify the specific overall allocation percentage used at the time each individual payment was made. Specifically, during the course of our evaluation, we were informed that the allocation as to the share of direct payments between Ford and GM to IT Corporation fluctuated over time. As we understand, Ford paid a 50% share up to the Arbitrator's decision or between September 1996 through about February 1998. Afterwards, Ford made payments based on the Arbitrator's overall allocation 26% for Ford's share related to the Bomber Plant, as well as the Ford Ypsilanti Plant and the Ford Rawsonville Plants. This corresponds to Ms. Newlon's statements in Attachment C1 that after the Arbitrator's decision, Ford and GM reconciled prior payments so that the total payments made to IT are now in accordance with the proportions established in the decision. However, as of March 22, 2005, the details regarding this reconciliation were not provided to us. As of March 22, 2005, we were informed by Ford's legal counsel that they could not disclose what Ford paid to IT Corporation due to confidentiality agreements between Ford and GM. This was also confirmed in C&K's letter to us dated April 1, 2005, stating that the overall allocation of the common cost incurred by Ford and GM is subject to a confidentiality agreement between the parties.

March 22, 2005 Updated Attachment C2

On March 22, 2005, Ms. Newlon provided us with an updated Attachment C2 schedule totaling $40,321,848.02 representing payments made under Payment Certificate Nos. 1 through 67. As we understand this revised schedule, payments shown represent direct payments by both Ford and GM to IT Corporation. However,

as with the original Attachment C2, this updated Attachment C2 does not segregate and identify individual payments Ford made to IT Corporation. Nor does this updated Attachment C2 identify the specific overall allocation percentage used at the time each individual payment was made.

<u>April 14, 2005 – Willow Run Group Reconciliation Letter Provided</u>

On April 14, 2005, Ms. Newlon did provide a letter to us giving the overall allocation percentage between Ford and GM as determined by Mr. Chet Tisdale who is the Arbitrator referenced in the Plaintiff's Statement. This letter is dated May 8, 1998, to representatives of both Ford and GM (See Appendix 2 on page 19).

As part of the reconciliation computation, this letter identifies individual direct payments by Ford for the dates of September 3, 1996, through February 20, 1998. Both the original and the updated Attachment C2s have payment dates starting on September 3, 1996. Yet we noted the original Attachment C2 and the updated Attachment C2 as of March 22, 2005, both indicate payment dates ending November 3, 1999, and January 10, 2002.

<u>April 28, 2005 – Additional Request for Ford Direct Payments to IT Corporation</u>

We requested, on April 28, 2005, a list of Ford's individual payments to IT Corporation be provided to us by May 2, 2005, and asked that this list indicate the date, dollar amount, and payment certificate reference for the corresponding Ford payment.

<u>May 10, 2005 Additional Request for Ford Direct Payments to IT Corporation</u>

We asked Ms. Newlon as to how the March 22, 2005, updated Attachment C2 would be reconciled to the original claimed amount of $3,936,622.02.

<u>May 25, 2005 Ford Ledger of Individual Payments to IT Corporation</u>

Ms. Newlon provided, via electronic mail at 4:28 pm on May 25, 2005, a Ford Ledger listing individual payments to IT Corporation (see Appendix 3 on page 29). However, this ledger did not identify the corresponding Payment Certificate Nos. to the individual payments listed.

On May 27, 2005, we discussed with Ms. Newlon the items on Ford's computerized ledger to evidence the Ford individual payments to IT Corporation. We noted the Ford ledger did not reference the Ford payments to the individual payment certificates. In addition, we noted the Ford ledger indicated it was generated on (RUN DATE) on May 9, 2005.

We cannot provide a statement as to the accuracy of the overall claimed cost for Ford's share of direct payments to IT Corporation, as:

- No revision to the original claim amount of $3,843,617 has been provided by the plaintiff or the plaintiff's outside counsel as impacted by the revised Attachment C2 schedules and Ford ledger; and
- From the data provided to us on May 27, 2005, we noted the following:

  (1). In our attempt to match the payments to the Ford ledger to the revised Attachment C2 (as revised on March 22, 2005) Ford did not produce remittance evidence from the period just after the Arbitrator's (Mr. Tisdale's) final allocation (reference paragraph 8 of Ms. Newlon's Declaration Attachment C1) or for Payment Certificate Nos. 22 through 59. This approximates a timeframe from early 1998 through early 2001 (Ms. Newlon emailed us an updated Attachment C2 on June 2, 2005, and this was noted by Ms. Newlon);

  (2). Though the Ford ledger shows a total of $14,965,569.93, there is an apparent duplicate payment for $469,770.15 related to Payment Certificate No. 27;

  (3). Based on our comparison of copies to remittance information, we were able to find remittance evidence for only $11,238,563. However, this remittance evidence was not in the form of cancelled checks, receipts, or bank statements as we requested. Rather, the data provided were copies of Ford's Remittance Information. See Note 2.b. (iv) for a description of the Ford Remittance Information document.

For informational purposes, based on Ms. Newlon's reconciliation between Ford and GM, GM was instructed to write a check to Ford in the amount of $7,086,833.44 of which $4,513,194.34 is Ford's overpayment to IT Corporation. This reconciliation was presented in a D&W letter dated May 8, 1998, to both Ford and GM and corresponds to paragraph eight of Ms. Newlon's Declaration (Attachment C1). Accordingly, any revisions presented by the Plaintiff should reflect this Ford credit.

Lastly, we are not certain of the impact a final IT Corporation invoice will have on Ford's share of direct payment to IT Corporation. For example, should the final invoice be adjusted for prior over billings, Ford's share of direct payments to IT Corporation may be reduced.

b. <u>Basis of Claimed Costs</u>.

(i) The proposed claimed amount, as set-forth in the February 21, 2005, Plaintiff Statement and the related Attachments C1 and C2 are summarized above. Attachment C2 sets forth the combined payment by Ford and GM directly to IT Corporation. The basis for the 9.763% allocation figure is given in Attachment B1 and represents Mr. Tisdale's assignment of relevant pollutant

coming from the Bomber Plant. Mr. Tisdale is the assigned arbitrator between Ford and GM. The Attachment C2 total of $39,470,085.53 has been reduced by $100,867.50 to reflect a pending payment to IT Corporation as explained in footnote 4 of Ms. Newlon's Declaration. Accordingly, the total amount used in the claim to represent the payments both Ford and GM have together paid is $39,369,218.03. The dates of payment indicated start from September 3, 1996, through November 3, 1999.

(ii) On March 22, 2005, Ms. Newlon of D&W provided us with an updated Attachment C2. This updated schedule was subsequently provided to your office on March 25, 2005. It is noted that a revised claimed amount, as impacted by the revised Attachment C2, has not yet been provided to us. The revised Attachment C2 includes direct payments to IT Corporation, as represented by payments made under Payment Certificate Nos. 1 through 67.

(iii) We were informed by Ms. Newlon on May 27, 2005, that she was planning to submit another updated Attachment C2 and on June 2, 2005, Ms. Newlon emailed this updated Attachment C2. As we understand Ms. Newlon, Ford has only made payments through Payment No. 59, for those certificates listed in the Attachment C2, as revised on March 22, 2005. Subsequently, GM and Ford settled such that Ford paid GM a certain amount whereby GM would be the sole party responsible for the Willow Run Creek Area. Although Ms. Newlon stated this settlement agreement would be provided to us May 27, 2005, we have not yet received it to date. However, in an email sent to us on June 2, 2005, Ms. Newlon states Ford resolved its future liability for ongoing remedial costs at the site with GM in a site exchange agreement. The settlement agreement is for the overall estimated Willow Run operations and management (O&M) costs for which Ford resolved its liability with GM by taking over GM obligations at other sites was $512,305. This email continues: Therefore, the bomber plant share of that overall O&M figure is properly added to the claim in this matter. In the same June 2, 2005 email, Ms. Newlon states she will forward us a redacted copy of the settlement agreement when final approval has been received from Ford.

In addition, IT Corporation has not submitted a final invoice with the applicable waivers and release and IT Corporation is most likely currently billing GM.

(iv) On May 25, 2005, D&W sent, via email, a Ford ledger dated May 9, 2005, detailing Ford's direct payments to IT Corporation. In addition, on May 27, 2005, D&W provided copies of certain remittance information and invoice documentation related to IT Corporation direct payments.

The remittance provided included hard copies of non-negotiable Ford documents entitled Remittance Information that include check number, payee, check amount, and a computerized signature. Also, included was a copy of one computer generated check for $175,286.92.

3. **Payments to Willow Run Trust Fund**

a. Summary of Conclusions.

For reasons previously noted, we are not able to provide a statement as to the accuracy of the overall claimed Ford payments to the Willow Run Trust Fund.

Nevertheless, to be responsive to your request, we are informing you that of the requested remittance evidence for seven Ford contributions into the Willow Run Trust Fund, we were only given copies of remittance information for three Ford contributions totaling $1,300,000 (see Appendix 4 on page 31). It is noted that while there are four deposit slips, one deposit slip did not include the corresponding Ford check.

Also, based on the same reconciliation as performed by Ms. Newlon for the IT Corporation direct payments, Ford was given credit and reimbursed by GM for $2,550,701.23 for Ford's overpayment into the Willow Run Trust Fund. This reconciliation was presented in a D&W letter dated May 8, 1998, to both Ford and GM and corresponds to paragraph eight of Ms. Newlon's Declaration (Attachment C1). Accordingly, any revisions presented by the Plaintiff should reflect this Ford credit.

b. Basis of Claimed Cost.

As set-forth in paragraph three of the Plaintiff Statement, the proposed claimed costs represent 9.763% of the total of $11,416,555.

The 9.763% is the Arbitrator's sub-allocation of total respective share for clean-up costs between Ford and GM. The basis for the Arbitrator's allocation is detailed in Attachments B1 and B2.and is described in detail in Attachment B1. The 9.763% represents the respective share for clean-up costs attributable to the Bomber Plant's operation between 1941 and 1945.

The $11,416,555 represents payments out of the Willow Run Trust Fund for expenditures related to clean-up costs, as adjusted for contributions into the fund for potentially responsible parties (PRP's) other than Ford and GM. Further details are provided in Attachment C1 and C2.

c. Audit Evaluation.

We requested a random sample of remittance evidence be provided to us for Ford's contribution into the Willow Run Trust Fund. The remittance evidence provided was given on May 27, 2005.

We also requested a sample of remittance evidence be provided for payments out of the Willow Run Trust Fund to substantiate the related cost expenditures.

SCHEDULE 1

DETAILED SUMMARY OF CLAIMED ATTORNEY FEES AND EXPERT FEES
(AS REVISED ON APRIL 8, 2005)

| Type of Fee | Attachment A Reference | | C&K Revised Amount | Notes |
|---|---|---|---|---|
| Legal Fees | A1, A2 | $ | 557,875 | (i), |
| Legal Fees | A1, A3 | | 1,005,770 | (i), (ii), (iii) |
| Legal Fees | A1, A4 | | 32,575 | (i), (ii) |
| Expert/Consultant Fees | A1, A5 | | 626,954 | (i) |
| Total | | $ | 2,223,174 | |

Legal Fees and Expert Fees

Summary of Items Noted During Auditor Evaluation

(i) We were unable to use other evaluation procedures to substantiate the use of the 80% allocation figure. In this regard, we attempted to determine what portion of the submitted attorney invoices specifically stated that the activity being billed was related to the Bomber Plant. This evaluation disclosed that most invoice descriptions were very generic in nature and that there was very little direct reference to the Bomber Plant. In addition, the Meenahan invoices in Attachment A5 for expert services also appear to be general in nature based on the brief descriptions of services provided in the corresponding invoices. Ms. Coughlin believes these Meenahan invoices are entirely related to the Bomber Plant.

(ii) We are unable to obtain the requested detail, on an invoice-by-invoice basis, of those invoices or parts of invoices that comprise the $69,894.92 being excluded from the claim, relative to Attachment A2 and the $8,678 being excluded from the claim, relative to Attachment A4. Accordingly, we cannot make an overall statement as to the accuracy of the amounts in Attachment A2 and A4. In order to verify the $69,894.92 and $8,678 we would need to evaluate these invoices on an individual basis. Therefore, we must first have the Plaintiff determine which invoices, or portions thereof, are being excluded. Otherwise, we may take exception to an invoice that the Plaintiff has already excluded, in whole or in part, from the claim. Though requested by us, to date, we have not received the determination from the Plaintiff or the Plaintiff's

outside legal counsel as to which these invoices, or portions thereof, are being excluded from the claim.

(iii) Certain D&W invoices provided to us in Attachment A3 did not include a D&W invoice number. The D&W ledgers indicate each invoice sent to Ford by invoice number. Thus, we could not compare these invoices to D&W ledgers provided to compare the D&W ledger entries indicating payment had been received by D&W from Ford to the corresponding D&W invoices.

Other Items

- Except for remittance evidence supporting payments made to experts/consultants in Attachment A5, we were not provided at this time, remittance evidence for the invoices listed in Attachments A2, A3, and A4.

- We noted the D&W ledgers provided appear to indicate certain D&W invoices that are classified by D&W as uncollectible. Since the Attachments A2 to A4 do not reference applicable D&W invoice numbers, we were unable to determine if any attorney fees being claimed would be one of the invoices that D&W appears to be classifying as uncollectible. The approximate value of these invoices approximates $135,000.

Plaintiff's Basis

(i) In paragraph eight of Attachment A1, Ms. Coughlin states the reason 80% allocation figure is used, where applicable, is that relatively more time and effort was required for the Bomber Plant to:

- litigate issues concerning flow sources from the Bomber Plant as contrasted with the other Ford facilities located in Rawsonville and Ypsilanti; and
- the overwhelming majority of environmental damage was attributed to flow sources and waste streams at, to, or from the Bomber Plant Facility.

(ii) Ms. Coughlin's Declaration in paragraph 9 indicates in effect that $69,894.82 of fees is being excluded from the claim. However, the supporting schedule in Attachment A2 only indicates $34,218.32 is being deducted from the claim.

In Attachment A4 there are ten uncircled flat $3,000 payments in 1997. Footnote 1 of Attachment A1 (Ms. Coughlin's Declaration) states of the ten uncircled flat $3,000 payments in 1997 in Attachment A4, $8,678 were for services rendered for other environmental sites. Yet, there is no detail we could find that disclosed, on an individual invoice-by-invoice basis, which invoices, or portions thereof, that reconcile to the $8,678.

Audit Evaluation

(i) Because the underlying work product, that may have given us an indication of effort expended on the Bomber Plant, was not made available to us, we attempted other procedures to evaluate the applicable 80% attorney fees allocation to the Bomber Plant. We obtained a random selection of attorney fee statements and expert fee statements. We analyzed the detailed descriptions of services provided as stated in the related invoice for each attorney fee statement and expert fee statement sampled. We then attempted to classify these descriptions to specific site activity in order to compute a percentage of effort for the Bomber Plant.

(ii) For the amounts related to the $69,894.92, as referenced in Attachments A1 for attorney fees in Attachment A2, and the $8,678 as referenced in Footnote 1 of Attachment A1 for attorney fees in Attachment A4, we asked that these amounts be identified to the corresponding invoices, on an invoice-by-invoice basis.

As you requested in our conversation of May 19, 2005, we have not held an exit conference with Ford representatives or representatives of Ford's legal counsel to discuss our results and request their response.

## DCAA PERSONNEL

| | Telephone No. |
|---|---|
| Primary contact(s) regarding this audit: | |
| Donald P Grogan, Auditor | (313) 363-8078 |
| Richard E Turk, Supervisory Auditor | (734) 805-3088 |
| Other contact(s) regarding this audit report: | |
| Richard J Ahkao, Branch Manager | (734) 805-3080 |
| | **FAX No.** |
| Great Lakes Branch Office | (734) 805-3090 |
| | **E-mail Address** |
| Great Lakes Branch Office | dcaa-fao2261@dcaa.mil |

General information on audit matters is available at http://www.dcaa.mil/.

## RELEVANT DATES

Request for Audit: DoJ – dated March 2, 2005; received March 2, 2005

## AUDIT REPORT AUTHORIZED BY:

*/Signed/*
**Richard J Ahkao**
**Branch Manager**
**Great Lakes Branch Office**

## AUDIT REPORT DISTRIBUTION AND RESTRICTIONS

DISTRIBUTION

| | E-mail Address |
|---|---|
| United States Department of Justice<br>Commercial Litigation Branch<br>Civil Division<br>ATTN: Mr. Kyle Chadwick, Esq.<br>1100 L Street, N. W.<br>Attn.: Classification Unit, 8th Floor<br>Washington, DC 20530 | john.lauro@pentagon.af.mil<br>Kyle.Chadwick@usdoj.gov |
| Ford Motor Company<br>One Parklane Blvd., Suite 600<br>Dearborn, MI 48126-2490<br>(Copy furnished thru DoJ) | |

RESTRICTIONS

1. Information contained in this audit report may be proprietary. It is not practical to identify during the conduct of the audit those elements of the data which are proprietary. Make proprietary determinations in the event of an external request for access. Consider the restrictions of 18 U.S.C. 1905 before releasing this information to the public.

2. Under the provisions of Title 32, Code of Federal Regulations, Part 290.7(b), DCAA will refer any Freedom of Information Act requests for audit reports received to the cognizant contracting agency for determination as to releasability and a direct response to the requestor.

3. The Defense Contract Audit Agency has no objection to release of this report, at the discretion of the contracting agency, to authorized representatives of FMC.

4. Do not use the information contained in this audit report for purposes other than action on the subject of this audit without first discussing its applicability with the auditor.

**APPENDIX 1**
Page 1 of 3

## CHRONOLOGY OF AUDIT REQUESTS

Written Request from DCAA to Cooper & Kirk (C&K) and C&K written response to DCAA

March 25, 2005 DCAA Request

DCAA letter dated March 25, 2005, to C&K included requests for:

Item 1 Attorney Fee and Expert Fee statements

- Attorney Fee and Expert Fee statements

Item 2 Payments to IT Corporation

- Documentation to verify Ford's payment contributions and/or any credits with General Motors (GM) and to other parties, including other potentially responsible parties, to IT Corporation.
- Final invoice from IT Corporation showing total cost and total paid.

Item 3 Payments to Willow Run Trust Fund

- Documentation to verify Ford's payment contributions and/or any credits with General Motors (GM) and to other parties, including other potentially responsible parties, to Willow Run Trust Fund.

We requested that original documentation be provided or a statement as to why original documentation cannot be provided for the above requested items.

C&K letter dated April 1, 2005 to DCAA – response to DCAA letter dated March 25, 2005

Item 1 – C&K states it understands that original documentation was provided to Mr. Grogan on March 23, 2005. (Auditor Note - only some of the expert fee statements were originals – attorney fees were copies – March 23, 2005, was Grogan entrance with Hofer, Ford In-house Attorney and Colatriano, C&K Attorney).

Item 2 – Payments to IT Corporation

Overall allocation of common cost as between Ford and GM is subject to confidentiality agreement between the parties. Absent - Court order or GM consent, C&K states they are not at liberty to disclose this information.

**APPENDIX 1**
Page 2 of 3

Item 3 – Payments to Willow Run Trust Fund

For similar reasons as stated in Item 2, C&K states they are not at liberty to disclose overall allocation of common cost between Ford and GM.

Original Documentation

D&W invoices – pre-1995 not available as D&W's retention policy is 10 years. Otherwise, effort of reviewing 10 years worth of client trust account files is unduly burdensome.

For larger invoices (e.g., Conestoga Rovers & Associates) only original invoice cover pages were sent to accounting. The original documentation was maintained in the client's files and is available for inspection.

IT Payment Certificates – D&W files only include copies of the certificates. These copies should be adequate to evidence the invoiced and paid amounts.

Email Requests

**ATTORNEY FEES AND EXPERT FEES**

DCAA April 25, 2005 email request – Attorney Fees and Expert Fees Sample of Remittance Evidence

On April 25, 2005, we emailed Mr. Colatriano, C&K Attorney requesting remittance evidence including canceled check, receipts, and bank statements are provided to us documenting Ford's payment of attorney fees and expert fees. We requested this data be provided to us by May 3, 2005.

DCAA May 3, 2005 email request – Attorney Fees and Expert Fees Reduced Sample of Remittance Evidence

On May 3, 2005, we reduced our request to the first 10 randomly selected items on Attachments A-2 through A-5.

C&K May 10, 2005 email response

Mr. Colatriano replied it would not be practicable to produce this information. Mr. Colatriano stated it is his understanding that Ford does not possess the cancelled checks for the payments at issue and a significant burden would be made on Ford to request its bank(s) to track down these cancelled checks.

## DIRECT PAYMENTS TO IT CORPORATION

DCAA April 28, 2005, email request – Direct Payments to IT Corporation

On April 28, 2005, we sent a request to Ms. Newlon of D&W to provide a list of Ford direct payments to IT Corporation. We explained this list would help us to select a sample for Ford payments for testing. We requested this list be provided to us by May 2, 2005.

D&W May 25, 2005, email and May 27, 2005 Office Visit

On May 25, 2005, D&W emailed us a Ford ledger showing Ford's direct payment to IT Corporation as shown in Appendix 3 of this report on page 29.

In addition, on May 27, 2005, Ms. Newlon provided various copies of remittance information as explained in Explanatory Note 2.b. (iv).

D&W June 2, 2005, email

On June 2, 2005, Ms. Newlon emailed us updated Attachment C2 Summary of IT Payments/Direct Payments to IT Corporation.

## WILLOW RUN TRUST FUND

DCAA May 5, 2005, email request – Ford Contributions into the Willow Run Trust Fund

On May 5, 2005, we requested a sample of remittance evidence, including canceled checks, bank statements, and receipts be provided to us on or before May 11, 2005.

C&K May 10, 2005, email response

Mr. Colatriano replied that Ms. Newlon is in the process of gathering a sample of deposit slips into the Trust Fund to evidence Ford's payments into the Fund.

D&W May 25, 2005, email

On May 25, 2005, D&W emailed the remittance data as shown in Appendix 4 of this report on page 31.

**APPENDIX 2**
Page 1 of 10

DICKINSON WRIGHT PLLC

500 WOODWARD AVENUE, SUITE 4000
DETROIT, MICHIGAN 48226-3425
TELEPHONE: (313) 223-3500
FACSIMILE: (313) 223-3598
http://www.dickinson-wright.com

SHARON R. NEWLON
snewlon@dickinson-wright.com
(313) 223-3674

May 8, 1998

**VIA FACSIMILE**

John R. Phillips
Ford Motor Company
One Parklane Boulevard
Parklane Towers East
Suite 728
Dearborn, MI 48126-2493

Elizabeth A. Zatina
Mail Code: 482-112-149
General Motors Corporation Legal Staff
3044 W. Grand Boulevard
Detroit, MI 48202

**Re: Willow Run Group**

Dear John and Liz:

Enclosed are the corrected charts adjusting amounts paid by Ford and General Motors into the Willow Run Trust Fund and directly to IT Corporation, to the allocation shares determined by Chet Tisdale of 26% for Ford and 74% for General Motors. Pursuant to our discussions, these charts have been revised to reflect actual payments made by each party to IT Corporation, as they appear in each parties' internal records. Additionally, pursuant to General Motors' request, the main chart incorporates both adjustments to the payments made by each party and adjustments made to account for interest accruing to the trust fund. According to our calculations, the proper amount of the total adjustment, as shown at the bottom of the main chart, is $7,086,833.94.

This package includes four charts in support of these calculations. The first chart identifies all trust fund assessment payments and direct payments on an annual basis, and it calculates an annual adjusted share for each, using the 26%/74% allocation. It also includes a summary line showing the adjustment for trust fund interest. The second chart shows each individual payment made by the parties to the trust fund and to IT by the date these payments were received. The third chart shows the calculation of the adjustment for trust fund interest. It identifies individual interest payments posted to the trust fund account, and it attributes those amounts to each party based on the party's annual share of contributions to the fund during the year the interest accrued. The total amount of interest attributable to each party was then adjusted to reflect the allocation shares of 26% for Ford and 74% for General Motors. As discussed in earlier correspondence, this adjustment was made because the interest accruing on this account was used to pay Group obligations. The final chart is support for the interest chart. It shows the annual payments made by each party to the trust fund and the annual percentage of each party's payment. These percentages were used to determine the amount of interest which was attributable to each party on an annual basis.

I hope these materials are helpful and complete in presenting the calculation of the Willow Run Group's adjusted shares of amounts paid toward the remediation of the Willow Run

**APPENDIX 2**
Page 2 of 10

DICKINSON WRIGHT PLLC

John R. Phillips
Elizabeth A. Zatina
May 8, 1998
Page 2

site. If any additional information is needed, please contact me as soon as possible. If no further information is needed, General Motors should prepare and send a check in the amount of $7,086,833.94 to the Willow Run Trust Fund to reimburse Ford for its overpayment of these costs. Once the check has cleared, the Trust Fund will immediately issue a check in that same amount to Ford Motor Company.

If you have any questions, please call me at (734) 453-8169.

Very truly yours,

Sharon R. Newlon /eab

Sharon R. Newlon

SRN/eab
enclosures

cc: David Tripp (w/encl.)
Margaret A. Coughlin (w/encl.)

DETROIT 23494-1 342298

Counsellors At Law

DETROIT BLOOMFIELD HILLS LANSING GRAND RAPIDS WASHINGTON, D.C.

**APPENDIX 2**
Page 3 of 10

*Privileged and Confidential*
*5/8/98*

SUMMARY OF AMOUNTS PAID BY FORD AND GENERAL MOTORS ON THE WILLOW RUN SITE
(WITH ADJUSTMENT OF FORD SHARE TO 26%)

TRUST FUND ASSESSMENTS / ADJUSTED SHARES

| Ford | GM | Year | Ford Adjusted Share | Ford Over-Payment | General Motors Adjusted Share | General Motors Underpayment |
|---|---|---|---|---|---|---|
| $ 87,062.50 | $ 29,687.50 | 1988 | $ 30,355.00 | $ 56,707.50 | $ 86,395.00 | $ 56,707.50 |
| $ - | $ - | 1989 | $ - | $ - | $ - | $ - |
| $ 287,937.50 | $ 95,312.50 | 1990 | $ 99,645.00 | $ 188,292.50 | $ 283,605.00 | $ 188,292.50 |
| $ 150,000.00 | $ 50,000.00 | 1991 | $ 52,000.00 | $ 98,000.00 | $ 148,000.00 | $ 98,000.00 |
| $ 357,604.18 | $ 125,636.89 | 1992 | $ 125,642.68 | $ 231,961.50 | $ 357,598.39 | $ 231,961.50 |
| $ 300,172.69 | $ 101,986.62 | 1993 | $ 104,561.42 | $ 195,611.27 | $ 297,597.89 | $ 195,611.27 |
| $ 182,431.87 | $ 160,810.62 | 1994 | $ 89,243.05 | $ 93,188.82 | $ 253,999.44 | $ 93,188.82 |
| $ 1,250,000.00 | $ 1,250,000.00 | 1995 | $ 650,000.00 | $ 600,000.00 | $ 1,850,000.00 | $ 600,000.00 |
| $ 1,622,608.50 | $ 1,622,608.50 | 1996 | $ 843,756.42 | $ 778,852.08 | $ 2,401,460.58 | $ 778,852.08 |
| $ 1,192,087.56 | $ 2,207,912.45 | 1997 | $ 884,000.00 | $ 308,087.56 | $ 2,516,000.01 | $ 308,087.56 |
| $ 68,578.81 | $ 195,185.83 | 1998 | $ 68,578.81 | $ - | $ 195,185.83 | $ - |
| $ 5,498,483.61 | $ 5,839,140.91 | $11,337,624.52 | $ 2,947,782.38 | $ 2,550,701.23 | $ 8,389,842.14 | $ 2,550,701.23 |

TRUST FUND INTEREST (from attached pages) / ADJUSTED SHARES

| Ford | GM | Year | Ford Adjusted Share | Ford Over-Payment | General Motors Adjusted Share | General Motors Underpayment |
|---|---|---|---|---|---|---|
| $ 44,514.94 | $ 38,471.84 | 1988-97 | $ 21,576.56 | $ 22,938.37 | $ 61,410.22 | $ 22,938.37 |

DIRECT PAYMENTS / ADJUSTED SHARES

| Ford | GM | Year | Ford Adjusted Share | Ford Over-Payment | General Motors Adjusted Share | General Motors Underpayment |
|---|---|---|---|---|---|---|
| $ 2,747,485.26 | $ 3,487,255.83 | 1996 | $ 1,621,032.68 | $ 1,126,452.58 | $ 4,613,708.41 | $ 1,126,452.58 |
| $ 6,654,973.74 | $ 5,915,149.25 | 1997 | $ 3,268,231.98 | $ 3,386,741.76 | $ 9,301,891.01 | $ 3,386,741.76 |
| $ 796,104.41 | $ 2,255,835.66 | 1998 | $ 796,104.41 | $ - | $ 2,255,835.66 | $ - |
| $ 9,402,459.00 | $ 9,402,405.08 | $18,804,864.08 | $ 5,685,369.07 | $ 4,513,194.34 | $ 16,171,435.08 | $ 4,513,194.34 |

| TOTAL ADJUSTMENT OF SHARES | Ford Credit | GM Debit |
|---|---|---|
| | $ 7,086,833.94 | $ 7,086,833.94 |

**APPENDIX 2**
Page 4 of 10

***Privileged and Confidential***
*5/8/98*

## SUMMARY OF TRUST FUND AND DIRECT PAYMENTS BY FORD AND GENERAL MOTORS ON THE WILLOW RUN SITE

TRUST FUND ASSESSMENTS

| | Ford | Date | | GM | Date | Year |
|---|---|---|---|---|---|---|
| $ | 87,062.50 | 11/4/88 | $ | 29,687.50 | 10/5/88 | 1988 |
| $ | - | | $ | - | | 1989 |
| $ | 104,367.18 | 4/19/90 | $ | 95,312.50 | 3/26/90 | 1990 |
| $ | 183,570.32 | 6/28/90 | | | | |
| $ | 150,000.00 | 2/8/91 | $ | 50,000.00 | 2/4/91 | 1991 |
| $ | 220,173.38 | 6/2/92 | $ | 79,826.62 | 5/18/92 | 1992 |
| $ | 137,430.80 | 12/11/92 | $ | 45,810.27 | 12/16/92 | |
| $ | 76,619.48 | 1/28/93 | $ | 25,539.83 | 2/8/93 | 1993 |
| $ | 175,921.74 | 7/13/93 | $ | 76,446.79 | 7/6/93 | |
| $ | 47,631.47 | 8/23/93 | | | | |
| $ | 32,431.87 | 9/26/94 | $ | 10,810.62 | 9/30/94 | 1994 |
| $ | 150,000.00 | 12/15/94 | $ | 150,000.00 | 12/15/94 | |
| $ | 750,000.00 | 5/24/95 | $ | 750,000.00 | 7/5/95 | 1995 |
| $ | 500,000.00 | 11/16/95 | $ | 500,000.00 | 11/29/95 | |
| $ | 500,000.00 | 1/16/96 | $ | 500,000.00 | 1/12/96 | 1996 |
| $ | 400,000.00 | 6/20/96 | $ | 400,000.00 | 6/17/96 | |
| $ | 250,000.00 | 9/25/96 | $ | 250,000.00 | 9/25/96 | |
| $ | 400,000.00 | 12/3/96 | $ | 400,000.00 | 12/3/96 | |
| $ | 72,608.50 | 12/18/96 | $ | 72,608.50 | 12/18/96 | |
| $ | 500,000.00 | 4/24/97 | $ | 500,000.00 | 4/15/97 | 1997 |
| $ | 400,000.00 | 6/4/97 | $ | 400,000.00 | 6/4/97 | |
| $ | 292,087.56 | 10/30/97 | $ | 400,000.00 | 8/29/97 | |
| | | | $ | 907,912.45 | 11/10/97 | |
| $ | 68,578.81 | 2/11/98 | $ | 195,185.83 | 2/12/98 | 1998 |
| $ | 5,498,483.61 | | $ | 5,839,140.91 | | $11,337,624.52 |

**APPENDIX 2**
Page 5 of 10

*Privileged and Confidential*
*5/8/98*

**DIRECT PAYMENTS**

| | Ford | Date | | GM | Date | Year |
|---|---|---|---|---|---|---|
| $ | 921,406.88 | 9/3/96 | $ | 921,406.88 | 9/3/96 | 1996 |
| $ | 256,175.75 | 10/29/96 | $ | 256,175.76 | 10/21/96 | |
| $ | 701,485.69 | 11/19/96 | $ | 701,485.68 | 11/5/96 | |
| $ | 868,416.94 | 12/17/96 | $ | 868,416.93 | 12/10/96 | |
| | | | $ | 355,048.45 | 12/26/96 | |
| $ | 355,048.44 | 1/15/97 | | | | 1997 |
| $ | 384,722.08 | 2/18/97 | $ | 384,722.10 | 2/11/96 | |
| $ | 138,416.24 | 3/28/97 | $ | 138,416.25 | 3/17/97 | |
| $ | 470,414.09 | 4/16/97 | $ | 470,414.09 | 3/25/97 | |
| $ | 233,794.07 | 5/30/97 | $ | 233,794.08 | 5/20/97 | |
| $ | 771,285.34 | 5/30/97 | $ | 771,285.35 | 5/20/97 | |
| $ | 1,224,764.24 | 7/8/97 | $ | 1,224,764.25 | 7/11/97 | |
| $ | 484,473.76 | 8/13/97 | $ | 484,473.75 | 8/26/97 | |
| $ | 517,887.46 | 9/17/97 | $ | 517,887.46 | 9/4/97 | |
| $ | 410,914.97 | 11/12/97 | $ | 437,239.97 | 10/14/97 | |
| $ | 539,571.80 | 10/21/97 | $ | 539,517.80 | 10/14/97 | |
| $ | 542,269.80 | 11/25/97 | $ | 515,944.81 | 11/18/97 | |
| $ | 581,411.45 | 12/30/97 | $ | 581,411.44 | 12/22/97 | |
| $ | 384,272.23 | 2/2/98 | $ | 1,093,697.90 | 2/19/98 | 1998 |
| $ | 158,931.76 | 2/20/98 | $ | 452,344.24 | 2/23/98 | |
| $ | 252,900.42 | | $ | 719,793.52 | | 1998* |
| $ | 10,198,563.41 | | $ | 11,668,240.71 | | $21,866,804.12 |

* This amount had been billed by IT Corporation, but was pending payment.

239887 v4

**Audit Report No. 2261-2005G 17200 002**

**APPENDIX 2**
Page 6 of 10

*Privileged and Confidential*
*5/8/98*

CALCULATION OF FORD AND GM ADJUSTED SHARES OF
INTEREST RECEIVED ON THE WILLOW RUN TRUST FUND ACCOUNT

| DATE | INTEREST MONTH | AMOUNT | TOTAL | FORD %* | FORD SHARE | GM %* | GM SHARE |
|---|---|---|---|---|---|---|---|
| 12/30/88 | December | $ 422.06 | $ 422.06 | 74.57% | $ 314.73 | 25.43% | $ 107.33 |
| 3/31/89 | Jan., Feb., March | $ 1,750.23 | | | | | |
| 4/30/89 | April | $ 404.78 | | | | | |
| 5/31/89 | May | $ 455.14 | | | | | |
| 6/30/89 | June | $ 566.77 | | | | | |
| 7/31/89 | July | $ 204.24 | | | | | |
| 8/31/89 | August | $ 216.86 | | | | | |
| 9/30/89 | September | $ 210.75 | | | | | |
| 10/31/89 | October | $ 227.14 | | | | | |
| 12/28/89 | November | $ 220.22 | | | | | |
| 12/31/89 | December | $ 182.96 | $ 4,439.09 | 74.57% | $ 3,310.23 | 25.43% | $ 1,128.86 |
| 1/31/90 | January | $ 186.03 | | | | | |
| 2/28/90 | February | $ 101.38 | | | | | |
| 3/31/90 | March | $ 79.93 | | | | | |
| 4/30/90 | April | $ 665.56 | | | | | |
| 5/31/90 | May | $ 899.35 | | | | | |
| 6/30/90 | June | $ 304.88 | | | | | |
| 7/31/90 | July | $ 1,015.34 | | | | | |
| 8/31/90 | August | $ 648.56 | | | | | |
| 9/30/90 | September | $ 574.31 | | | | | |
| 10/31/90 | October | $ 655.76 | | | | | |
| 12/28/90 | November | $ 572.15 | | | | | |
| 12/31/90 | December | $ 234.56 | $ 5,937.81 | 75.13% | $ 4,461.08 | 24.87% | $ 1,476.73 |
| 1/31/91 | January | $ 23.93 | | | | | |
| 3/8/91 | February | $ 460.85 | | | | | |
| 4/9/91 | March | $ 437.59 | | | | | |
| 5/7/91 | April | $ 423.21 | | | | | |
| 6/11/91 | May | $ 410.95 | | | | | |
| 7/10/91 | June | $ 353.59 | | | | | |



FOR OFFICIAL USE ONLY

**APPENDIX 2**
Page 7 of 10

*Privileged and Confidential*
*5/8/98*

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/6/91 | July | $ | 417.67 | | | | | | | |
| 9/9/91 | August | $ | 371.44 | | | | | | | |
| 10/9/91 | September | $ | 325.22 | | | | | | | |
| 11/11/91 | October | $ | 42.49 | | | | | | | |
| 12/10/91 | November | $ | 32.93 | | | | | | | |
| 1/10/92 | December | $ | 33.78 | $ | 3,333.65 | 75.00% | $ | 2,500.24 | 25.00% | $ 833.41 |
| 2/11/92 | January | $ | 31.06 | | | | | | | |
| 3/10/92 | February | $ | 23.63 | | | | | | | |
| 4/9/92 | March | $ | 14.45 | | | | | | | |
| 5/13/92 | April | $ | 9.88 | | | | | | | |
| 6/9/92 | May | $ | 456.94 | | | | | | | |
| 7/16/92 | June | $ | 849.70 | | | | | | | |
| 8/7/92 | July | $ | 588.15 | | | | | | | |
| 9/9/92 | August | $ | 399.01 | | | | | | | |
| 10/6/92 | September | $ | 100.16 | | | | | | | |
| 11/12/92 | October | $ | 93.38 | | | | | | | |
| 1/29/92 | November | $ | 94.22 | | | | | | | |
| 1/12/93 | December | $ | 84.96 | $ | 2,745.54 | 74.00% | $ | 2,031.70 | 26.00% | $ 713.84 |
| 2/9/93 | January | $ | 65.00 | | | | | | | |
| 3/9/93 | February | $ | 47.20 | | | | | | | |
| 4/15/93 | March | $ | 49.32 | | | | | | | |
| 5/7/93 | April | $ | 8.50 | | | | | | | |
| 6/8/93 | May | $ | 8.08 | | | | | | | |
| 7/9/93 | June | $ | 8.60 | | | | | | | |
| 8/10/93 | July | $ | 384.23 | | | | | | | |
| 9/9/93 | August | $ | 423.27 | | | | | | | |
| 10/11/93 | September | $ | 431.17 | | | | | | | |
| 11/10/93 | October | $ | 406.37 | | | | | | | |
| 12/8/93 | November | $ | 447.71 | | | | | | | |
| 1/8/94 | December | $ | 445.83 | $ | 2,725.28 | 74.64% | $ | 2,034.15 | 25.36% | $ 691.13 |
| 2/8/94 | January | $ | 420.55 | | | | | | | |
| 3/9/94 | February | $ | 298.15 | | | | | | | |
| 4/11/94 | March | $ | 228.14 | | | | | | | |
| 5/6/94 | April | $ | 178.07 | | | | | | | |
| 6/8/94 | May | $ | 200.92 | | | | | | | |
| 7/12/94 | June | $ | 203.79 | | | | | | | |

**APPENDIX 2**
Page 8 of 10

*Privileged and Confidential*
*5/8/98*

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/3/94 | July | $ | 231.09 | | | | | | | | |
| 9/9/94 | August | $ | 176.91 | | | | | | | | |
| 10/10/94 | September | $ | 158.71 | | | | | | | | |
| 11/9/94 | October | $ | 254.29 | | | | | | | | |
| 12/9/94 | November | $ | 72.48 | | | | | | | | |
| 1/6/95 | December | $ | 573.30 | $ | 2,996.40 | 53.15% | $ | 1,592.59 | 46.85% | $ | 1,403.81 |
| 2/7/95 | January | $ | 938.03 | | | | | | | | |
| 2/28/95 | February | $ | 791.38 | | | | | | | | |
| 4/8/95 | March | $ | 586.51 | | | | | | | | |
| 5/8/95 | April | $ | 227.08 | | | | | | | | |
| 6/8/95 | May | $ | 900.80 | | | | | | | | |
| 7/10/95 | June | $ | 2,466.45 | | | | | | | | |
| 8/8/95 | July | $ | 4,502.39 | | | | | | | | |
| 9/8/95 | July (additional) | $ | 155.90 | | | | | | | | |
| 9/8/95 | August | $ | 5,016.20 | | | | | | | | |
| 10/11/95 | September | $ | 4,607.86 | | | | | | | | |
| 11/7/95 | October | $ | 1,188.01 | | | | | | | | |
| 12/6/95 | November | $ | 1,242.70 | | | | | | | | |
| 1/4/96 | December | $ | 2,425.92 | $ | 25,049.23 | 50.00% | $ | 12,524.62 | 50.00% | $ | 12,524.62 |
| 2/7/96 | January | $ | 2,391.00 | | | | | | | | |
| 3/10/96 | February | $ | 1,968.20 | | | | | | | | |
| 4/10/96 | March | $ | 1,510.21 | | | | | | | | |
| 5/3/96 | April | $ | 1,585.92 | | | | | | | | |
| 6/7/96 | May | $ | 520.28 | | | | | | | | |
| 7/3/96 | June | $ | 1,376.85 | | | | | | | | |
| 8/26/96 | July | $ | 3,391.68 | | | | | | | | |
| 9/30/96 | August | $ | 2,805.36 | | | | | | | | |
| 10/14/96 | September | $ | 1,786.98 | | | | | | | | |
| 11/8/96 | October | $ | 2,247.41 | | | | | | | | |
| 12/11/96 | November | $ | 895.02 | | | | | | | | |
| 1/7/97 | December | $ | 1,985.67 | $ | 22,464.58 | 50.00% | $ | 11,232.29 | 50.00% | $ | 11,232.29 |
| 2/28/97 | January | $ | 1,050.37 | | | | | | | | |
| 3/5/97 | February | $ | 640.13 | | | | | | | | |
| 4/3/97 | March | $ | 323.05 | | | | | | | | |
| 5/7/97 | April | $ | 1,254.64 | | | | | | | | |
| 6/10/97 | May | $ | 894.77 | | | | | | | | |

**APPENDIX 2**
Page 9 of 10

*Privileged and Confidential*
*5/8/98*

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 7/3/97 | June | $ | 1,843.89 | | | | | | |
| 8/13/97 | July | $ | 506.78 | | | | | | |
| 9/4/97 | August | $ | 201.25 | | | | | | |
| 10/8/97 | September | $ | 1,546.05 | | | | | | |
| 1/13/97 | October | $ | 455.77 | | | | | | |
| 12/7/97 | November | $ | 2,429.76 | | | | | | |
| 1/6/98 | December | $ | 1,726.68 | $ 12,873.14 | 35.06% | $ 4,513.32 | 64.94% | $ 8,359.82 | |
| TOTAL | | | | $ 82,986.78 | 53.64% | $ 44,514.94 | 46.36% | $ 38,471.84 | |
| Adjusted Shares | | | | | 26.00% | $ 21,576.56 | 74.00% | $ 61,410.22 | |
| Ford Credit/GM Debit | | | | | | $ 22,938.37 | | $ (22,938.37) | |

*Note: These shares are based on each party's annual percentage of overall contributions to the Willow Run Trust Fund.
See backup table on annual trust fund contributions for calculation of annual contribution percentages.

#326615

Page 4

**APPENDIX 2**
Page 10 of 10

*Privileged and Confidential*
*5/8/98*

ANNUAL SUMMARY OF TRUST FUND PAYMENTS
BY FORD AND GENERAL MOTORS ON THE WILLOW RUN SITE

TRUST FUND ASSESSMENTS

| | Ford | | GM | Year | Ford % * | GM % * |
|---|---|---|---|---|---|---|
| $ | 87,062.50 | $ | 29,687.50 | 1988 | 74.57% | 25.43% |
| $ | - | $ | - | 1989 | | |
| $ | 287,937.50 | $ | 95,312.50 | 1990 | 75.13% | 24.87% |
| $ | 150,000.00 | $ | 50,000.00 | 1991 | 75.00% | 25.00% |
| $ | 357,604.18 | $ | 125,636.89 | 1992 | 74.00% | 26.00% |
| $ | 300,172.69 | $ | 101,986.62 | 1993 | 74.64% | 25.36% |
| $ | 182,431.87 | $ | 160,810.62 | 1994 | 53.15% | 46.85% |
| $ | 1,250,000.00 | $ | 1,250,000.00 | 1995 | 50.00% | 50.00% |
| $ | 1,622,608.50 | $ | 1,622,608.50 | 1996 | 50.00% | 50.00% |
| $ | 1,192,087.56 | $ | 2,207,912.45 | 1997 | 35.06% | 64.94% |
| $ | 68,578.81 | $ | 195,185.83 | 1998 | 26.00% | 74.00% |
| $ | 5,498,483.61 | $ | 5,839,140.91 | $11,337,624.52 | | |

* these % are based on total put in by each for CY - not running total - but each CY treated separately.

**APPENDIX 3**
Page 1 of 2

PROGRAM: GCAP2C1A - 01    B A T C H SUPPLIER INVOICES / PURCHASE ORDER INQUIRY    RUN DATE: 05/09/05
DIVISION: A    RUN TIME: 19:04:49
PLANT: 00    REQUESTED BY : EBECCHET    PAGE: 02

REQ DIV: A PLANT: 00 PO: SUPPLIER: T952A - IT CORPORATION BEGIN DATE: 95001 END DATE: 03001

| INVOICE | PL | MICRO NUMBER | INVOICE AMOUNT | FND | PO/PS | STATUS | BNK | CHECK # | CHECK DATE | REMIT CODE |
|---|---|---|---|---|---|---|---|---|---|---|
| 326013 | 01 | 8233C0034902 | 173572.47 | USD | 185943 | PAID, ARCHIVED - 090598 | 622 | 0003823925 | 980824 | T952A |
| 326014 | 01 | 8233C0034903 | 132562.20 | USD | 185943 | PAID, ARCHIVED - 090598 | 622 | 0003823925 | 980824 | T952A |
| 328320 | 01 | 8268C0041161 | 440237.72 | USD | 185943 | PAID, ARCHIVED - 100398 | 622 | 0003921523 | 980928 | T952A |
| 328687 | 01 | 8278C0053001 | 27001.05 | USD | 185943 | PAID, ARCHIVED - 103198 | 622 | 0003945812 | 981006 | T952A |
| 329739 | 01 | 8289C0040274 | 469770.15 | USD | 185943 | PAID, ARCHIVED - 103198 | 622 | 0003983109 | 981019 | T952A |
| 329740 | 01 | 8289C0040275 | 189960.36 | USD | 185943 | PAID, ARCHIVED - 103198 | 622 | 0003983109 | 981019 | T952A |
| 330522 | 01 | 8301C0044153 | 469770.16 | USD | 185943 | PAID, ARCHIVED - 103198 | 622 | 0004008050 | 981029 | T952A |
| 330523 | 01 | 8301C0044154 | 168783.07 | USD | 185943 | PAID, ARCHIVED - 103198 | 622 | 0004008050 | 981029 | T952A |
| 331443 | 01 | 8320C0119363 | 504490.61 | USD | 185943 | PAID, ARCHIVED - 120598 | 622 | 0004061738 | 981117 | T952A |
| 338141 | 01 | 9050C0043799 | 21917.07 | USD | 185943 | PAID, ARCHIVED - 022799 | 622 | 0004274013 | 990222 | T952A |
| 338142 | 01 | 9050C0043800 | 30540.02 | USD | 185943 | PAID, ARCHIVED - 022799 | 622 | 0004274013 | 990222 | T952A |
| 339801 | 01 | 9075C0047403 | 21917.07 | USD | 185943 | PAID, ARCHIVED - 040999 | 622 | 0004324145 | 990317 | T952A |
| 344786 | 01 | 9155C0042929 | 12044.27 | USD | 185943 | PAID, ARCHIVED - 070299 | 622 | 0004491785 | 990607 | T952A |
| 350209 | 01 | 9229C0047593 | 53255.64 | USD | 185943 | PAID, ARCHIVED - 090399 | 622 | 0004637206 | 990818 | T952A |
| 350210 | 01 | 9229C0047594 | 22371.88 | USD | 185943 | PAID, ARCHIVED - 090399 | 622 | 0004637206 | 990818 | T952A |
| 350889 | 01 | 9238C0062849 | 32333.31 | USD | 185943 | PAID, ARCHIVED - 090399 | 622 | 0004655834 | 990827 | T952A |
| 356814 | 01 | 9302C0055922 | 360255.24 | USD | 185943 | PAID, ARCHIVED - 110699 | 622 | 0004796375 | 991101 | T952A |
| 356815 | 01 | 9302C0055923 | 44964.40 | USD | 185943 | PAID, ARCHIVED - 110699 | 622 | 0004796375 | 991101 | T952A |
| 356816 | 01 | 9302C0055924 | 159594.06 | USD | 185943 | PAID, ARCHIVED - 110699 | 622 | 0004796375 | 991101 | T952A |
| 359472 | 01 | 9334C0049052 | 23331.10 | USD | 185943 | PAID, ARCHIVED - 120499 | 622 | 0004852947 | 991201 | T952A |
| 362400 | 01 | 9356C0049710 | 14774.60 | USD | 185943 | PAID, ARCHIVED - 123099 | 622 | 0004905145 | 991223 | T952A |
| 364328 | 01 | 0027C0023853 | 9543.43 | USD | 185943 | PAID, ARCHIVED - 020500 | 622 | 0004962384 | 000128 | T952A |
| 367917 | 01 | 0074C0077576 | 7455.50 | USD | 185943 | PAID, ARCHIVED - 040100 | 622 | 0005058163 | 000315 | T952A |
| 369059 | 01 | 0088C0047925 | 5964.40 | USD | 185943 | PAID, ARCHIVED - 040100 | 622 | 0005083313 | 000329 | T952A |
| 372326 | 01 | 0125C0038487 | 5964.40 | USD | 185943 | PAID, ARCHIVED - 060400 | 622 | 0005160477 | 000505 | T952A |
| 378957 | 01 | 0203C0118035 | 50862.52 | USD | 185943 | PAID, ARCHIVED - 080500 | 622 | 0005313066 | 000724 | T952A |
| 378975 | 01 | 0203C0118036 | 5964.40 | USD | 185943 | PAID, ARCHIVED - 080500 | 622 | 0005313066 | 000724 | T952A |
| 382602 | 01 | 0255C0051955 | 5964.40 | USD | 185943 | PAID, ARCHIVED - 093000 | 622 | 0005410176 | 000912 | T952A |
| 385494 | 01 | 0283C0059999 | 7455.50 | USD | 185943 | PAID, ARCHIVED - 110400 | 622 | 0005466810 | 001010 | T952A |
| 391039 | 01 | 0341C0041982 | 5964.40 | USD | 185943 | PAID, ARCHIVED - 122800 | 622 | 0005580113 | 001207 | T952A |
| 391040 | 01 | 0341C0041983 | 5964.40 | USD | 185943 | PAID, ARCHIVED - 122800 | 622 | 0005580113 | 001207 | T952A |
| 391263 | 01 | 0343C0078095 | 7455.50 | USD | 185943 | PAID, ARCHIVED - 122800 | 622 | 0005586053 | 001211 | T952A |
| 397762 | 01 | 1044C0159201 | 13482.05 | USD | 185943 | PAID, ARCHIVED - 030301 | 622 | 0005703771 | 010214 | T952A |
| 399727 | 01 | 1065C0041268 | 5964.40 | USD | 185943 | PAID, ARCHIVED - 033101 | 622 | 0005749477 | 010307 | T952A |
| 400938 | 01 | 1079C0039764 | 7455.50 | USD | 185943 | PAID, ARCHIVED - 033101 | 622 | 0005778923 | 010321 | T952A |
| 405435 | 01 | 1123C0054222 | 26901.95 | USD | 185943 | PAID, ARCHIVED - 060101 | 622 | 0005866361 | 010504 | T952A |
| 409785 | 01 | 1164C0071587 | 5964.40 | USD | 185943 | PAID, ARCHIVED - 063001 | 622 | 0005945378 | 010614 | T952A |
| 8244528 | 01 | 8082V1516531 | 82445.28 | USD | | PAID, ARCHIVED - 040498 | 622 | 0003417242 | 980325 | T952A |
| 13841624 | 01 | 7079V1215400 | 138416.24 | USD | | PAID, ARCHIVED - 032897 | 622 | 0002382707 | 970321 | T952A |
| 15893176 | 01 | 8049V1145374 | 158931.76 | USD | | PAID, ARCHIVED - 022898 | 622 | 0003324186 | 980219 | T952A |
| 17045514 | 01 | 8077V1609548 | 170455.14 | USD | | PAID, ARCHIVED - 040498 | 622 | 0003406281 | 980320 | T952A |
| 17528692 | 01 | 9020V1612589 | 175286.92 | USD | | PAID, ARCHIVED - 013099 | 622 | 0004207729 | 990121 | T952A |



**FOR OFFICIAL USE ONLY**

**APPENDIX 3**
Page 2 of 2

PROGRAM: GCAP2C1A - 01 B A T C H SUPPLIER INVOICES / PURCHASE ORDER INQUIRY RUN DATE: 05/09/05
DIVISION: A RUN TIME: 19:04:49
PLANT: 00 REQUESTED BY : EBECCHET PAGE: 03

REQ DIV: A PLANT: 00 PO: SUPPLIER: T952A - IT CORPORATION BEGIN DATE: 95001 END DATE: 03001

| INVOICE | PL | MICRO NUMBER | INVOICE AMOUNT | FND | PO/PS | STATUS | BNK | CHECK # | CHECK DATE | REMIT CODE |
|---|---|---|---|---|---|---|---|---|---|---|
| 23379408 | 01 | 7133V0858420 | 233794.08 | USD | | PAID, ARCHIVED - 053197 | 622 | 0002541641 | 970514 | T952A |
| 23379408 | 01 | 7175M1409178 | 233794.08- | USD | | PAID, ARCHIVED - 070497 | 622 | 0002541641 | 970624 | T952A |
| 25617575 | 01 | 6289V1202548 | 256175.75 | USD | | PAID, ARCHIVED - 110296 | 622 | 0001922542 | 961016 | T952A |
| 35504844 | 01 | 7007V1544541 | 355048.44 | USD | | PAID, ARCHIVED - 020197 | 622 | 0002160264 | 970109 | T952A |
| 38427223 | 01 | 8021V1536181 | 384272.23 | USD | | PAID, ARCHIVED - 013198 | 622 | 0003248471 | 980123 | T952A |
| 38472208 | 01 | 7037V1513036 | 384722.08 | USD | | PAID, ARCHIVED - 030197 | 622 | 0002256563 | 970210 | T952A |
| 41091497 | 01 | 7301V1405020 | 410914.97 | USD | | PAID, ARCHIVED - 110197 | 622 | 0003014802 | 971029 | T952A |
| 47041409 | 01 | 7086V1128133 | 470414.09 | USD | | PAID, ARCHIVED - 040597 | 622 | 0002408473 | 970401 | T952A |
| 48447376 | 01 | 7217V1412240 | 484473.76 | USD | | PAID, ARCHIVED - 083097 | 622 | 0002781595 | 970806 | T952A |
| 51788746 | 01 | 7232V1232225 | 517887.46 | USD | | PAID, ARCHIVED - 083097 | 622 | 0002825524 | 970821 | T952A |
| 53951780 | 01 | 7279V1540423 | 539517.80 | USD | | PAID, ARCHIVED - 110197 | 622 | 0002956468 | 971008 | T952A |
| 54226980 | 01 | 7316V1428474 | 542269.80 | USD | | PAID, ARCHIVED - 112797 | 622 | 0003059837 | 971113 | T952A |
| 58141145 | 01 | 7353V1553246 | 581411.45 | USD | | PAID, ARCHIVED - 123097 | 622 | 0003180492 | 971222 | T952A |
| 70148569 | 01 | 6312V1131176 | 701485.69 | USD | | PAID, ARCHIVED - 112896 | 622 | 0001990352 | 961108 | T952A |
| 86841694 | 01 | 6346V1101220 | 868416.94 | USD | | PAID, ARCHIVED - 122796 | 622 | 0002092985 | 961212 | T952A |
| 92140688 | 01 | 6232V1151176 | 921406.88 | USD | | PAID, ARCHIVED - 083196 | 622 | 0001744400 | 960820 | T952A |
| 100507941 | 01 | 7135V1544189 | 1005079.41 | USD | | PAID, ARCHIVED - 053197 | 622 | 0002559900 | 970520 | T952A |
| 104000000 | 01 | 8322V1249239 | 1040000.00 | USD | | PAID, ARCHIVED - 120598 | 622 | 0004068874 | 981119 | T952A |
| 122476424 | 01 | 7171V1601058 | 1224764.24 | USD | | PAID, ARCHIVED - 070497 | 622 | 0002661465 | 970624 | T952A |

TOTAL INVOICE AMOUNT : 14965569.93

**APPENDIX 4**
Page 1 of 8

DICKINSON, WRIGHT, MOON, VAN DUSEN & FREEMAN

**CLIENT FUNDS DEPOSIT FORM**

CLIENT NO: 23494 MATTER NO: 0001

CLIENT NAME: Willow Run Group

CLIENT TRUST SUB-ACCOUNT NAME {*IF APPLICABLE*}: Expenses

ATTORNEY SUBMITTING FORM: Sharon R. Newlon

PERSON TO CONTACT {*IF QUESTIONS*}: S.R. Newlon EXTENSION: 3674

NEW ACCOUNT: ☐ EXISTING ACCOUNT: ☒

AMOUNT: $ 400,000.00 CHECK NO: 002042253

PAID BY: Ford Motor Company

ESTIMATED PERIOD FOR WHICH FUNDS WILL BE HELD: one month

FUNDS TO BE USED FOR: payment of legal and administrative expenses

PLACE FUNDS IN:

☐ IOLTA ACCOUNT {NON-INTEREST BEARING}

☒ BUSINESS MONEY MARKET BONUS ACCOUNT
*IMPORTANT – BUSINESS MONEY MARKET ACCOUNT REQUIRES CLIENT'S SOCIAL SECURITY NUMBER OR EMPLOYER ID NUMBER*

APPROVED BY: Sharon R. Newlon [signature]
Sharon R. Newlon

*** *FOR ACCOUNTING USE ONLY* ***

DATE OF DEPOSIT: ____________

BANK: ____________ ACCOUNT NO: ____________

ACCOUNT TYPE: ____________ REMITTANCE PREPARED: ____________

COMPETED BY: ____________

APPENDIX 4
Page 2 of 8

Ford C10006551 TEXAS COMMERCE BANK 088-0088
2 002042253 SAN ANGELO, TEXAS 1113
FORD MOTOR COMPANY
CENTRAL ACCOUNTING SERVICES CHECK NUMBER
P.O. BOX 1758 002042253
DEARBORN, MI 48121

*------ AMOUNT ------*

DATE 11/26/96 *******400,000 DOLLARS 00 CENTS $400,000.00
PAYABLE IN U.S. DOLLARS
*---U.S. DOLLARS---*

PAY TO THE ORDER OF
DICKINSON WRIGHT CLIENT TRUST
ACCOUNT WILLOW RUN
800 FIRST NATIONAL BLDG
DETROIT, MI 48226

VOID AFTER SIX MONTHS
M. S. MACDONALD
TREASURER
PHONE 313 458-0165

⑈002042253⑈ ⑆111300880⑆ 06300003772⑈



FOR OFFICIAL USE ONLY

**APPENDIX 4**
Page 3 of 8

DICKINSON, WRIGHT, MOON, VAN DUSEN & FREEMAN

**CLIENT FUNDS DEPOSIT FORM**

4/21/97

CLIENT NO: 23494 MATTER NO: 0001

CLIENT NAME: Willow Run Group

CLIENT TRUST SUB-ACCOUNT NAME {*IF APPLICABLE*}: Expenses

ATTORNEY SUBMITTING FORM: Sharon R. Newlon

PERSON TO CONTACT {*IF QUESTIONS*}: S.R. Newlon EXTENSION: 3674

NEW ACCOUNT: ☐ EXISTING ACCOUNT: ☒

AMOUNT: $ 500,000.00 CHECK NO: 002438062

PAID BY: Ford Motor Company

ESTIMATED PERIOD FOR WHICH FUNDS WILL BE HELD: one month

FUNDS TO BE USED FOR: payment of legal and administrative expenses

PLACE FUNDS IN:

☐ IOLTA ACCOUNT {NON-INTEREST BEARING}

☒ BUSINESS MONEY MARKET BONUS ACCOUNT
*IMPORTANT - BUSINESS MONEY MARKET ACCOUNT REQUIRES CLIENT'S SOCIAL SECURITY NUMBER OR EMPLOYER ID NUMBER*

APPROVED BY: Sharon R. Newlon
Sharon R. Newlon

*** *FOR ACCOUNTING USE ONLY* ***

DATE OF DEPOSIT: ____________

BANK: ____________ ACCOUNT NO: ____________

ACCOUNT TYPE: ____________ REMITTANCE PREPARED: ____________

COMPETED BY: ____________

**Audit Report No. 2261-2005G 17200 002**

**APPENDIX 4**
Page 4 of 8

C10006551
2 002438062
FORD MOTOR COMPANY
CENTRAL ACCOUNTING SERVICES
P.O. BOX 1758
DEARBORN, MI 48121

TEXAS COMMERCE BANK
SAN ANGELO, TEXAS

088-0088
1113

CHECK NUMBER
002438062

DATE 04/11/97

*******500,000 DOLLARS 00 CENTS
PAYABLE IN U.S. DOLLARS

*----- AMOUNT -----*
$500,000.00
*---U.S. DOLLARS---*

PAY TO THE ORDER OF
DICKINSON WRIGHT CLIENT TRUST
ACCOUNT WILLOW RUN
800 FIRST NATIONAL BLDG
DETROIT, MI 48226

VOID AFTER SIX MONTHS

M. S. MACDONALD
TREASURER
PHONE 313 458-0165

⑈002438062⑈ ⑆111300880⑆ 06300003772⑈



FOR OFFICIAL USE ONLY

**APPENDIX 4**
Page 5 of 8

DICKINSON, WRIGHT, MOON, VAN DUSEN & FREEMAN

**CLIENT FUNDS DEPOSIT FORM**

CLIENT NO: 23494 MATTER NO: 0001

CLIENT NAME: Willow Run Group

CLIENT TRUST SUB-ACCOUNT NAME *(IF APPLICABLE)*: Expenses

ATTORNEY SUBMITTING FORM: Sharon R. Newlon

PERSON TO CONTACT *(IF QUESTIONS)*: S.R. Newlon EXTENSION: 3674

NEW ACCOUNT: ☐ EXISTING ACCOUNT: X

AMOUNT: $ 400,000.00 CHECK NO: 002581140

PAID BY: Ford Motor Company

ESTIMATED PERIOD FOR WHICH FUNDS WILL BE HELD: one month

FUNDS TO BE USED FOR: payment of legal and administrative expenses

---

PLACE FUNDS IN:

☐ IOLTA ACCOUNT {NON-INTEREST BEARING}

X BUSINESS MONEY MARKET BONUS ACCOUNT
*IMPORTANT – BUSINESS MONEY MARKET ACCOUNT REQUIRES CLIENT'S SOCIAL SECURITY NUMBER OR EMPLOYER ID NUMBER*

APPROVED BY: Sharon R Newlon

---

*** *FOR ACCOUNTING USE ONLY* ***

DATE OF DEPOSIT: ____________

BANK: ____________ ACCOUNT NO: ____________

ACCOUNT TYPE: ____________ REMITTANCE PREPARED: ____________

COMPETED BY: ____________

\\Dt-fs-01\wordpro\SRN\23494\0001\FRM Client Trust Acct - Ford 6-9-97.doc

**APPENDIX 4**
Page 6 of 8

C10006551 TEXAS COMMERCE BANK 088-0088
2 002581140 SAN ANGELO, TEXAS 1113
FORD MOTOR COMPANY
CENTRAL ACCOUNTING SERVICES
P.O. BOX 1758
DEARBORN, MI 48121

CHECK NUMBER
002581140

DATE 05/29/97 *******400,000 DOLLARS 00 CENTS
PAYABLE IN U.S. DOLLARS

*------ AMOUNT ------*
$400,000.00
*---U.S. DOLLARS---*

PAY TO THE ORDER OF
DICKINSON WRIGHT CLIENT TRUST
ACCOUNT WILLOW RUN
800 FIRST NATIONAL BLDG
DETROIT, MI 48226

VOID AFTER SIX MONTHS

M. S. MACDONALD
TREASURER
PHONE 313 458-0165

⑈002581140⑈ ⑆111300880⑆ 0630000377 2⑈

**APPENDIX 4**
Page 7 of 8

Ford

Ford Motor Company
Office of the General Counsel
Direct Dial: (313) 390-1876
Facsimile: (313) 390-3083

Suite 728 - Parklane Towers East
One Parklane Boulevard
Dearborn, Michigan 48126-2493

OCT 30 1997

October 29, 1997

**VIA OVERNIGHT EXPRESS**

Ms. Sharon R. Newlon
Dickinson, Wright, Moon,
VanDusen & Freeman
500 Woodward Avenue
Suite 400
Detroit, Michigan 48226

Re: Willow Run Superfund Site

Dear Sharon:

Enclosed is Ford Motor Company's check for $292,087.56 as payment of the recent assessment under the Consent Order and Interim Funding Agreement in the above-referenced matter.

Very truly yours,

Eileen A. Martin

Eileen A. Martin

EAM:se
Enclosure

**APPENDIX 4**
Page 8 of 8

DICKINSON, WRIGHT, MOON, VAN DUSEN & FREEMAN

**CLIENT FUNDS DEPOSIT FORM**
October 30, 1997

CLIENT NO: 23494 MATTER NO: 1

CLIENT NAME: Willow Run Group

CLIENT TRUST SUB-ACCOUNT NAME {*IF APPLICABLE*}: ______

ATTORNEY SUBMITTING FORM: Sharon R. Newlon

PERSON TO CONTACT {*IF QUESTIONS*}: S.R. Newlon EXTENSION: 3674

NEW ACCOUNT: ☐ EXISTING ACCOUNT: X

AMOUNT: $292,087.56 CHECK NO: 003013471

PAID BY: Ford Motor Company

ESTIMATED PERIOD FOR WHICH FUNDS WILL BE HELD: one month

FUNDS TO BE USED FOR: payment of legal and administrative expenses

PLACE FUNDS IN: ☐ IOLTA ACCOUNT {NON-INTEREST BEARING}

X BUSINESS MONEY MARKET BONUS ACCOUNT
***IMPORTANT** – BUSINESS MONEY MARKET ACCOUNT REQUIRES CLIENT'S SOCIAL SECURITY NUMBER OR EMPLOYER ID NUMBER*

APPROVED BY: Sharon R. Newlon (copy)

*** *FOR ACCOUNTING USE ONLY* ***

DATE OF DEPOSIT: ______

BANK: ______ ACCOUNT NO: ______

ACCOUNT TYPE: ______ REMITTANCE PREPARED: ______

COMPETED BY: ______

*DETROIT 23494-1 144758*